**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO, EASTERN DIVISION**

| | | |
|---|---|---|
| **QDOBA RESTAURANT CORPORATION,** | ) | |
| **9330 BALBOA AVENUE** | ) | |
| **SAN DIEGO, CALIFORNIA 92123** | ) | |
| | ) | **JUDGE** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO.** |
| | ) | |
| **T&J FRESH MEX LTD,** | ) | |
| **24500 CHAGRIN BLVD., SUITE 300** | ) | |
| **BEACHWOOD, OHIO 44122** | ) | |
| | ) | |
| **MATTHEW RODDY,** | ) | |
| **1655 BERKSHIRE ROAD** | ) | |
| **GATES MILLS, OHIO 44040-9718** | ) | |
| | ) | |
| **JAMES J. RODDY, JR.,** | ) | |
| **7879 BATTLES ROAD** | ) | |
| **GATES MILLS, OHIO 44040-9711** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **THOMAS GOODING,** | ) | |
| **7134 ASHLAWN DRIve** | ) | |
| **BRECKSVILLE, OHIO 44141-1004** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

Plaintiff, Qdoba Restaurant Corporation ("Qdoba"), by and through the undersigned counsel,

brings this action for breach of contract against Defendants T&J Fresh Mex LTD ("T&J" or "Franchisee"),

Matthew Roddy ("Matthew Roddy"), James J. Roddy, Jr. ("James Roddy"), and Thomas Gooding

("Gooding") (collectively, the "Defendants").   Qdoba alleges as follows:

## THE PARTIES

1.      Qdoba is a Colorado corporation with its principal place of business at 9330 Balboa Avenue, San Diego, California 92123.   Qdoba has developed and operates a distinctive system relating to the establishment and operation of Mexican-themed fast-casual restaurants that it licenses to operate in 48 states.

2.      T&J is an Ohio limited liability company with its principal place of business at 24500 Chagrin Boulevard, Suite 300, Beachwood, Ohio 44122.   T&J was a franchisee of Qdoba and operated five Qdoba restaurant locations in Northeast Ohio.

3.      Matthew Roddy is a citizen of the State of Ohio and, upon information and belief, resides at 1655 Berkshire Road, Gates Mills, Ohio 44040-9718.

4.      James Roddy is a citizen of the State of Ohio and, upon information and belief, resides at 7879 Battles Road, Gates Mills, Ohio 44040-9711.

5.      Gooding is a citizen of the State of Ohio and, upon information and belief, resides at 7134 Ashlawn Drive, Brecksville, Ohio 44141-1004.

## JURISDICTION AND VENUE

6.      The court has diversity jurisdiction over this action under 28 U.S.C.A. § 1332, as the parties are citizens of different states and the amount in controversy exceeds $75,000.

7.      Venue is proper in this court under 28 U.S.C.A. § 1391(b)(1), (2).

## FACTUAL BACKGROUND

8.      Qdoba was founded over 20 years ago in Denver, Colorado.   Since then, Qdoba has opened over 700 Qdoba Mexican-themed fast-casual restaurants located in 48 states and Canada.

9.      Qdoba has the right to grant licenses for the establishment and operation of restaurants using distinctive exterior and interior design, décor, color scheme and furnishings; special recipes and menu items; uniform standards, specifications and procedures for operations; a catering program; high quality

and uniform products and services; standardized and/or tiered pricing structures; procedures for inventory and management control; training and assistance; and marketing and promotional programs ("the System").

10.     Qdoba identifies the System by means of certain trade names, service marks, trademarks, logos, emblems, and indicia of origin, including but not limited to, the registered marks "Qdoba Mexican Eats®" and "Qdoba Mexican Grill®" and variations thereon, and such other trade names, service marks, trademarks, logos and indicia or origin that are designated by Qdoba for use in connection with the System (collectively, the "Proprietary Marks").[1]

## The Franchise Agreements

11.     On or about August 19, 2009, T&J entered into a Franchise Agreement with Qdoba for the operation of a Qdoba restaurant at 6319 Wilson Mills Road, Highland Heights, Ohio 44143, and Matthew Roddy, James Roddy, and Gooding all executed a Guaranty and Assumption of Franchise Owner's Obligations, which is exhibit C to the Franchise Agreement (collectively, "Site 2608 Franchise Agreement").   A true and accurate copy of the Site 2608 Franchise Agreement is attached hereto as Exhibit A.

12.     On or about October 10, 2017, T&J entered into a Franchise Agreement with Qdoba for the operation of a Qdoba restaurant at 20090 Van Aken Blvd., Shaker Heights, Ohio 44122, and Matthew Roddy executed a Guaranty and Assumption of Franchise Owner's Obligations, which is exhibit B to the Franchise Agreement (collectively, "Site 2387 Franchise Agreement").   A true and accurate copy of the Site 2387 Franchise Agreement is attached hereto as Exhibit B.

13.     On or about October 10, 2017, T&J entered into a Franchise Agreement with Qdoba for the operation of a Qdoba restaurant at 7402 Broadview Road, Parma, Ohio 44134, and Matthew Roddy executed a Guaranty and Assumption of Franchise Owner's Obligations, which is exhibit B to the Franchise Agreement (collectively, "Site 2254 Franchise Agreement").   A true and accurate copy of the Site 2254 Franchise Agreement is attached hereto as Exhibit C.

---

[1]  These marks include Reg. No. 4,227,729; Reg. No. 2,452,146; Reg. No. 2,574,316; Reg. No. 4,833,275; and Reg. No. 4,819,478.

14.     On or about October 10, 2017, T&J entered into a Franchise Agreement with Qdoba for the operation of a Qdoba restaurant at 11324 Euclid Avenue, Cleveland, Ohio 44106, and Matthew Roddy executed a Guaranty and Assumption of Franchise Owner's Obligations, which is exhibit B to the Franchise Agreement (collectively, "Site 2411 Franchise Agreement").   A true and accurate copy of the Site 2411 Franchise Agreement is attached hereto as Exhibit D.

15.     On or about October 10, 2017, T&J entered into a Franchise Agreement with Qdoba for the operation of a Qdoba restaurant at 9552 Mentor Avenue, Mentor, Ohio 44060, and Matthew Roddy executed a Guaranty and Assumption of Franchise Owner's Obligations, which is exhibit B to the Franchise Agreement (collectively, "Site 2190 Franchise Agreement").   A true and accurate copy of the Site 2190 Franchise Agreement is attached hereto as Exhibit E.[2]

16.     Pursuant to Section 1.1 of the Franchise Agreements, Qdoba granted T&J the right to use and do business under the System and under the Proprietary Marks of the System at the locations specified in the Franchise Agreements and permitted T&J to operate a Qdoba restaurant at the location and to use the Proprietary Marks and the System solely in connection with operating that restaurant.

17.      The Franchise Agreements provide that the Franchisee "must not be in default under any provision of this Agreement. . . or any other agreement between Franchisee and Company."   (Section 2.2.6).

18.     Section 2.2.7 requires the Franchisee and the Owners of the Franchisee to "have timely met all monetary obligations to [Qdoba] and its Affiliates throughout the term of this Agreement."   Upon information and belief, Matthew Roddy, James Roddy, and Gooding currently are or have been owners of the Franchisee.

19.     The Franchise Agreements require T&J to pay Qdoba a continuing weekly royalty fee ("Royalty") in the amount equal to 5% of the restaurant's gross sales each week during the term of the

---

[2] The Site 2387 Franchise Agreement, Site 2608 Franchise Agreement, Site 2254 Franchise Agreement, Site 2411 Franchise Agreement, and Site 2190 Franchise Agreement are collectively referred to herein as the "Franchise Agreements."

Franchise Agreements.   (Section 3.2).   Any payments not received by Qdoba on or before its due date "will be deemed overdue.   If any payment is overdue, Franchisee must pay [Qdoba], in addition to the overdue amount, interest on such amount from the date it was due until paid, at the rate of eighteen percent (18%) per annum, or the maximum rate permitted by law, whichever is less."   (Section 3.4, Site 2254, Site 2411, Site 2387 and Site 2190 Franchise Agreements; Section 3.3, Site 2608 Franchise Agreement).

20.     The Franchise Agreements also require that T&J "must keep the business open and in normal operation for such hours and days as [Qdoba] may from time to time specify in the Manual or as [Qdoba] may otherwise specify or approve in writing."   (Section 10.1.2, Site 2254, Site 2411, Site 2387 and Site 2190 Franchise Agreements; Section 10.1.4, Site 2608 Franchise Agreement).

21.     T&J was also required by the Franchise Agreement to "pay all Suppliers (and all other providers of services or products) according to agreed-upon terms of payment, so as not to impair the reputation of Company of other franchisees, or otherwise impair the Marks."   (Section 12.8, Franchise Agreements).

22.     The Franchise Agreements provided that T&J "must make a weekly contribution to the Qdoba Marketing Fund ("Marketing Fund")."   Four of the Franchise Agreements provide for a weekly contribution of 1.25% of Franchisee's weekly gross sales (Section 13.1.1, Site 2254, Site 2411, Site 2387 and Site 2190 Franchise Agreements) and the Site 2608 Franchise Agreement requires a weekly contribution to the marketing fund to be determined by Qdoba but not to exceed 2% of the Franchisee's weekly gross sales (Section 13.2.1, Site 2608 Franchise Agreement).

23.     T&J was also required, because the Franchise Agreements for Sites 2254, Site 2411, Site 2387 and Site 2190 were renewal agreements, to complete a "renovation, modernization and improvement of the Restaurant[s], and the furniture, fixtures, equipment located thereon, as [Qdoba] may reasonably require ("Reimage"). . . to reflect the then-current standards and image of the System. . ." within six (6) months after signing these Franchise Agreements in October 2017.   (Section 2.25, Site 2254, Site 2411, Site 2387 and Site 2190 Franchise Agreements).

24.     Qdoba has the right, under the Franchise Agreements, to require all or certain of Franchisee's Owners to execute a Guaranty and Assumption of Franchise Owner's Obligations ("Guaranty").   Qdoba required, and Matthew Roddy, James Roddy, and Gooding did sign, the Guaranty for the Site 2608 Franchise Agreement. (Section 18.1 and Ex. C, Site 2608 Franchise Agreement). Matthew Roddy signed the Guaranty for the Site 2254, Site 2411, Site 2387 and Site 2190 Franchise Agreements.   (Section 18.1 and Ex. B, Site 2254, Site 2411, Site 2387 and Site 2190 Franchise Agreements).   The Guaranty Agreements provide that each Guarantor "(a) guarantees to [Qdoba], and its successors and assigns, for the term of the Agreement and thereafter as provided in the Agreement, that Franchisee shall punctually pay and perform each and every undertaking, agreement and covenant set forth in the Agreement; and (b) agrees to be personally bound by, and personally liable for the breach of, each and every provision in the Agreement, both monetary obligations and other obligations, including, without limitation, the obligation to pay costs and legal fees as provided in the Agreement. . .."   Moreover, the Guarantors agreed that their liability would be joint and several with the Franchisee and the Guarantors, and that the Guarantor "shall render any payment or performance required under the Agreement upon demand if Franchisee fails or refuses punctually to do so." (Ex. C Site 2608 Franchise Agreement; Ex. B, Site 2254, Site 2411, Site 2387 and Site 2190 Franchise Agreements).

25.     The Franchise Agreements are to expire at the earlier of ten (10) years from the effective date of the Agreement or upon expiration or termination of T&J's right to remain in possession of, or operate, a Qdoba® restaurant at the approved location.   (Section 2.1, Franchise Agreements).

26.     The Franchise Agreements contain provisions for immediate termination.   The Franchisee "will be deemed to be in default under this Agreement, and all rights granted herein will immediately terminate automatically and without notice to Franchisee if . . . Franchisee at any time ceases to operate the Franchised Business for a period of five consecutive days, or otherwise abandons the Franchised Business." (Section 29.1.8, Site 2608 Franchise Agreement; Section 28.1.8, Site 2254, Site 2411, Site 2387 and Site 2190 Franchise Agreements).

27.     The Franchise Agreements also contain provisions for termination after opportunity to cure.   Specifically, the Franchisee will be deemed to be in default and Qdoba may terminate the Agreement if the condition is susceptible of being cured and the Franchisee does not correct the condition within the cure period.   One of those grounds for termination after opportunity to cure is that the "Franchisee fails to make any payment required under this Agreement.   Franchisee will have 10 days after receiving written notice to correct such condition." (Section 29.3.11, Site 2608 Franchise Agreement; Section 28.3.1, Site 2254, Site 2411, Site 2387 and Site 2190 Franchise Agreements).   In addition, if the Franchisee fails to comply with any provision of the Agreement, or it defaults under any agreement with Qdoba, it can be terminated thirty (30) days after receiving written notice to correct the condition and the default has not been cured.   (Section 29.3.13 and 29.3.14, Site 2608 Franchise Agreement; Section 28.3.13 and 28.3.14, Site 2254, Site 2411, Site 2387 and Site 2190 Franchise Agreements).

28.     Upon termination of the Franchise Agreements, "all rights granted under this Agreement to Franchisee will immediately terminate," and Franchisee must comply with post-termination obligations, including, without limitation, to immediately cease operating the Franchised Business, to immediately and permanently cease to use the System and Proprietary Marks, and return Qdoba's documents and confidential information.   In addition, the "Franchisee must discharge any and all indebtedness to the Suppliers and other vendors of products and services."   (Section 30, Site 2608 Franchise Agreement; Section 29, Site 2254, Site 2411, Site 2387 and Site 2190 Franchise Agreements).   The Franchisee is also required to "promptly pay all sums owing to [Qdoba] and its Affiliates" with such sums in the event of termination for default to include all "damages, costs and expenses, including reasonable attorneys' fees, incurred by [Qdoba]" as a result of the default and in obtaining relief for the enforcement of any provisions of this Agreement.   (Sections 30.7 and 30.8, Site 2608 Franchise Agreement; Sections 29.11 and 29.12, Site 2254, Site 2411, Site 2387 and Site 2190 Franchise Agreements).

### *May 15, 2018 Agreement and Release and Promissory Note*

29.     Qdoba was forced to file a lawsuit against T&J in the Cuyahoga County Court of Common Pleas because of past due payments on equipment leases.   That case resulted in a July 14, 2014 Stipulated

Judgment Entry whereby T&J was required to pay Qdoba $589,492.94 according to a payment plan. T&J subsequently failed to make payments pursuant to that plan and failed to make regular royalty and other payments under the Franchise Agreements to Qdoba. On or about April 2018, T&J requested that the amount due under the payment plan be modified and that Qdoba create a payment schedule for the past due amounts under the Franchise Agreement. Qdoba agreed to make modifications to the payment plan and to create a schedule for repayment of past due amounts. As a result, Qdoba and T&J entered into an Agreement and Release dated May 15, 2018 (the "Agreement and Release") and a Promissory Note. A copy of the Agreement and Release is attached hereto as Exhibit F.

30.    Pursuant to Section 2 of the Agreement and Release, T&J's payment plan under the Stipulated Judgment Entry was modified as follows: T&J was required to pay Qdoba $132,000 total, in monthly installments of $3,666.67, starting on June 1, 2018, and continuing on the first day of each month thereafter until thirty-six (36) total payments were made.

31.    With respect to the past due amounts under the Franchise Agreements, Section 3 of the Agreement and Release required T&J to pay Qdoba $1,970.14 monthly, beginning on June 1, 2018, and continuing on the first day of each month thereafter until thirty-six (36) total payments were made.

32.    In conjunction with the Agreement and Release, T&J and Matthew Roddy also executed a Promissory Note for $132,000 dated May 15, 2018, whereby T&J and Matthew Roddy agreed to pay Qdoba $132,000. The $132,000 was to be paid in monthly installments of $3,666.67 starting on June 1, 2018 and continuing on the first day of each month thereafter until thirty-six (36) total payments have been made. The Promissory Note contains a liquidated damages provision whereby T&J and Matthew Roddy agreed to pay to Qdoba five percent (5%) of the total amount of each payment due under the Promissory Note which is not paid by the date upon which it is due. (Promissory Note Page 1 at (i)). The Promissory Note also contains a provision regarding interest, such that if the note is not paid in full, "any amounts remaining outstanding shall thereafter accrue interest at a default rate of 10% until paid in full." (Promissory Note Page 1 at (ii)). Finally, the Promissory Note provides for recovery of reasonable costs

and attorneys' fees for the services rendered to the prevailing party. (Promissory Note Page 2). A true and accurate copy of the Promissory Note is attached hereto as Exhibit G.

**_T&J's Default and Termination_**

33. Beginning on or about November 2018, T&J failed to make the required monthly payments of $1,970.14 under Section 3 of the Agreement and Release. T&J has not made payment in full. Specifically, T&J still owes Qdoba $51,223.71.

34. Beginning on or about December 2018, T&J failed to make the required monthly payments of $3,666.67 under Section 2 of the Agreement and Release and the Promissory Note. T&J and Matthew Roddy have not paid the full $132,000. Specifically, T&J and Matthew Roddy still owe Qdoba $118,535.12.

35. Qdoba learned in December 2018 from one of T&J's landlords, Alpha Investments, that T&J had not been paying rent on the lease for one of its Qdoba restaurant locations. Upon information and belief, T&J has not been paying its suppliers either.

36. Beginning on or about January 2019, T&J failed to make Royalty payments and Marketing Fund payments required by the Franchise Agreements.

37. T&J also had not made the required remodels or Reimages of the restaurants for Sites 2190, 2254, 2254, 2387 and 2411. T&J should have done this within six (6) months of signing the Franchise Agreements in October 2017, but T&J had not done any work to Reimage its restaurant locations as of December 2018, and still has not to date.

38. As a result of the aforementioned conduct, Qdoba sent T&J a Notice of Default dated January 24, 2019. Qdoba notified T&J it was in default of the provisions of the Franchise Agreements requiring T&J to make payments to Qdoba, requiring T&J to remain current on all obligations to its vendors and landlords, requiring T&J to complete a remodel of its restaurant locations, and that it was in default for each site T&J operated by virtue of the cross-default provisions of the Franchise Agreements in Sections 28.3.14 of the Site 2190, 2254, 2387 and 2411 Franchise Agreements and Section 29.3.14 of the Site 2608

- 9 -

Franchise Agreement.   Qdoba informed T&J it had until March 31, 2019 to cure the identified defaults.   A copy of this letter is attached hereto as Exhibit H**.**

39.     Qdoba sent T&J a Revised Notice of Default on February 27, 2019 after Qdoba learned that T&J also failed to pay rent on its lease for Site 2387, the restaurant located in Shaker Heights.   A copy of the February 27, 2019 letter is attached hereto as Exhibit I**.**

40.     Qdoba sent T&J an additional Notice of Default on March 19, 2019 after Qdoba received a letter from T&J's landlord at Site 2190, the Mentor restaurant, concerning T&J's failure to pay rent.   A copy of the March 19, 2019 letter is attached hereto as Exhibit J**.**   Upon information and belief, T&J was forced to leave this location on or about May 12, 2019 for nonpayment of rent.

41.     On April 2, 2019, Qdoba sent T&J a Notice of Default and Termination for Sites 2190, 2254, 2387, 2411 and 2608.   Qdoba explained that T&J had failed to cure any of the defaults identified in its January 24, 2019 letter, or any of the additional defaults set forth in Qdoba's February and March letters. Qdoba informed T&J it was exercising its right to terminate the Franchise Agreements effective April 2, 2019.   Qdoba also indicated it would grant T&J a temporary license to operate the restaurants under the terms of the Franchise Agreements from April 2, 2019 until September 30, 2019, and that T&J could accept this temporary license by continuing to operate its restaurants.   T&J continued operating its restaurants. A copy of the April 2, 2019 letter and accompanying Temporary License Agreement is attached hereto as Exhibit K**.**

42.     The Temporary License Agreement provides that Qdoba reserves the right to terminate the Temporary License for whatever reason, with or without cause, before its expiration.   (Section 1.)   T&J was required to comply with all terms set forth in the terminated Franchise Agreements as modified by the Temporary License Agreement.   (Section 2.)   Specifically, T&J will be responsible for all amounts that are or would become owed to Qdoba, and T&J "must operate the Restaurants in compliance with [Qdoba's] standards of operation, maintain the assets in the usual and ordinary course of business. . .."   (Section 2.)

- 10 -

Upon termination of expiration of the Temporary License Agreement, T&J must undertake all post-termination actions required by the terminated Franchise Agreements.   (Section 3.)

43.     On or about May 10, 2019, Qdoba learned that T&J intended to close Site 2190 on May 12, 2019.   Qdoba sent T&J a notice advising T&J that any closure of Site 2190 (the Mentor location) or any other Qdoba restaurant without Qdoba's authorization before the end of the Temporary License Agreement constitutes a violation of that agreement and that Qdoba "intends to terminate the license agreements for all of T&J's Qdoba restaurants."   A copy of the May 10, 2019 letter is attached hereto as Exhibit L**.**

44.     T&J closed Site 2190, the Mentor location, on May 12, 2019 without authorization from Qdoba.

45.     Qdoba sent T&J a letter dated May 31, 2019 notifying T&J that it was terminating the Temporary License Agreement effective immediately and that T&J must cease to operate the restaurants and discontinue use of the Proprietary Marks.   Qdoba reminded T&J of its payment obligations that T&J had defaulted on as well.   A copy of the May 31, 2019 letter is attached hereto as Exhibit M**.**

46.     Despite the May 31, 2019 termination of the Temporary License Agreement, and without any authorization from Qdoba, T&J continued operating its four other Qdoba restaurants.

47.     Qdoba sent T&J a cease and desist letter on June 6, 2019, demanding that T&J immediately stop operating the Qdoba locations and close the restaurants and again notified T&J that it was in direct violation of the Franchise Agreements and interfering with Qdoba's exclusive rights in and to the Proprietary Marks.   A true and accurate copy of the June 6, 2019 letter is attached hereto as Exhibit N.   It appears that Qdoba has ceased operating the four restaurants as of June 7, 2019.

48.     Qdoba provided T&J with the initial Notice of Default on January 24, 2019.   Qdoba provided more than thirty (30) days' opportunity to cure the defaults before sending the April 2, 2019 Notice of Termination.   To date T&J has not cured the defaults.

**COUNT I – BREACH OF CONTRACT (FRANCHISE AGREEMENTS)**

49.     Qdoba incorporates the allegations set forth in the preceding paragraphs of this Complaint as if fully rewritten.

50.     Qdoba and T&J entered into five (5) written Franchise Agreements whereby Qdoba licensed use of the System and Proprietary Marks to T&J in order to operate five Qdoba restaurants. Matthew Roddy executed a Guaranty Agreement for all of the Franchise Agreements, and James Roddy and Good executed a Guaranty Agreement for the Site 2608 Franchise Agreement.

51.     Qdoba substantially performed all of its obligations under the Franchise Agreements.

52.     T&J failed to make payments to Qdoba that were required by the Franchise Agreements, T&J failed to pay its landlords, T&J refused to remodel its store locations, T&J failed to maintain and operate Site 2190, T&J failed to comply with its obligations under the May 15, 2018 Agreement and Release and the Promissory Note, and T&J continued operating Qdoba restaurants even after the Franchise Agreements were terminated by Qdoba.   All of this conduct constitutes a breach of T&J's obligations under the Franchise Agreements, and of the obligations of Matthew Roddy, James Roddy, and Gooding under the Guaranty Agreements.

53.     Qdoba provided T&J with notice and an opportunity to cure the defaults, but T&J failed to do so.   Matthew Roddy, James Roddy, and Gooding have not cured the defaults either.

54.     T&J's conduct constitutes a breach of the express provisions of the Franchise Agreements and the Guaranty Agreements.

55.     Qdoba has been damaged by the breaches in an amount to be determined at trial, but believed to be in excess of $1,000,000.

**COUNT II – BREACH OF CONTRACT (PROMISSORY NOTE)**

56.     Qdoba incorporates the allegations set forth in the preceding paragraphs of this Complaint as if fully rewritten.

57.     T&J and Matthew Roddy executed a Promissory Note for $132,000 dated May 15, 2018,

whereby T&J and Matthew Roddy agreed to pay Qdoba $132,000 in monthly installments of $3,666.67 starting on June 1, 2018 and continuing on the first day of each month thereafter until thirty-six (36) total payments have been made.

58.     T&J and Matthew Roddy failed to make payments to Qdoba that were required under the Promissory Note. The failure to make payments constitutes a breach under the Promissory Note.

59.     Qdoba provided T&J and Matthew Roddy with notice and an opportunity to cure the default, but T&J and Matthew Roddy failed to do so.

60.     T&J's and Matthew Roddy's conduct constitutes a breach of the express terms of the Promissory Note.

61.     Qdoba has been damaged by T&J's and Matthew Roddy's breach in an amount to be determined at trial, but believed to be in excess of $118,000.

### COUNT III – BREACH OF CONTRACT (AGREEMENT AND RELEASE)

62.     Qdoba incorporates the allegations set forth in the preceding paragraphs of this Complaint as if fully rewritten.

63.     Qdoba and T&J entered into an Agreement and Release dated May 15, 2018 whereby T&J was required to pay Qdoba $132,000 total, in monthly installments of $3,666.67 starting on June 1, 2018 and continuing on the 1st of every month thereafter until thirty-six (36) total payments were made.

64.     Under the Agreement and Release, T&J was also required to pay Qdoba $1,970.14 monthly, beginning on June 1, 2018, and continuing on the first of each month thereafter until thirty-six (36) total payments were made for past due amounts under the Franchise Agreements.

65.     Qdoba substantially performed all of its obligations under the Agreement and Release.

66.     T&J failed to make payments to Qdoba it was required under the Agreement and Release. The failure to make payments constitutes a breach under the Agreement and Release.

67.     Qdoba provided T&J with notice and an opportunity to cure the default, but T&J failed to do so.

68.     T&J's conduct constitutes a breach of the express terms of the Agreement and Release.

69.     Qdoba has been damaged by T&J's breach in an amount to be determined at trial, but believed to be in excess of $50,000.

### PRAYER FOR RELIEF

WHEREFORE, Qdoba hereby requests that this Court enter a judgment in its favor and order:

(a)     T&J and Matthew Roddy be required to pay Qdoba such damages as Qdoba has sustained as a consequence of T&J's breach of the Franchise Agreements for Sites 2387, 2254, 2411, and 2190, plus interest as calculated under the Franchise Agreements or at law;

(b)     T&J, Matthew Roddy, James Roddy and Thomas Gooding be required to pay Qdoba such damages as Qdoba has sustained as a consequence of T&J's breach of the Franchise Agreement for Site 2608, plus interest as calculated under the Site 2608 Franchise Agreement or at law;

(c)     T&J and Matthew Roddy be required to pay Qdoba such damages as Qdoba has sustained as a consequence of their breach of the Promissory Note, plus interested as calculated under the Promissory Note or at law;

(d)     T&J be required to pay Qdoba such damages as Qdoba has sustained as a consequence of their breach of the Agreement and Release, plus interest as calculated at law;

(e)     T&J and Matthew Roddy be required to pay Qdoba's costs, expenses, and attorneys' fees in connection with this action as provided for in the Franchise Agreements, Guaranty and Assumption of Franchise Owner's Obligations, and Promissory Note; and,

(f)     such other and further relief as the court may deem just, equitable and proper.

Dated:   June 7, 2019

/s/ Jennifer S. Roach
Jennifer S. Roach
Jennifer.Roach@ThompsonHine.com
Caitlin R. Thomas
Caitlin.Thomas@ThompsonHine.com
**THOMPSON HINE LLP**
3900 Key Center, 127 Public Square

- 14 -

Cleveland, OH 44114
Telephone: (216) 566-5500
Fax: (216) 566-5800

*Attorneys for Qdoba Restaurant Corporation*